## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KIMBERLY KEPKE,

     *Plaintiff*,

*v.*                      CASE NO. 13-CV-13944

COMMISSIONER OF            DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

      This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 14) and Motion for Remand (doc. 16) be **DENIED**, that Defendant's Motion for Summary Judgment (doc. 22) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

      Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB) and Supplemental Security Income (SSI). The matter is currently before

---

[1]The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

this Court on cross-motions for summary judgment and Plaintiff's Motion for Remand.[2] (Docs. 14, 16, 22, 23, 26.)

Plaintiff protectively filed an application for a period of disability, DIB and SSI on February 10, 2011, alleging that she became disabled on September 13, 2006. (Transcript, Doc. 8 at 106, 120, 197-212.) The claims were denied at the initial administrative stages. (Tr. 106, 120.) On March 12, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the application for benefits *de novo*. (Tr. 36, 42.) In a decision dated April 16, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 13, 2006 through the date of the ALJ's decision. (Tr. 36.) Plaintiff requested Appeals Council review of this decision. (Tr. 14-15.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 31, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) On September 16, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc.*

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a

party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

## D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through March 31, 2012, and had not engaged in substantial gainful activity since April 30, 2010. (Tr. 23.) At step two, the ALJ found that Plaintiff's hypertension, attention deficit disorder, chronic obstructive pulmonary disease, adjustment disorder with anxiety and depressed mood, right tibial plateau fracture status post right knee replacement, obesity and L4-5 spinal stenosis were "severe" within the meaning of the second sequential step. (Tr. 23.) The ALJ found that Plaintiff's diabetes mellitus-type II, hypercholesterolemia, history of post-traumatic stress disorder, history of abuse of narcotic pain medications and mild cardiomegaly were non-severe impairments. (Tr. 23.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 24-26.)

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary[3] work except she requires a sit/stand option, can only rarely (up to 5% of the workday) climb ramps or stairs, can only rarely stoop, cannot crouch, must avoid even moderate exposure to temperature extremes, to wetness/humidity, and to chemicals, must avoid all exposure to environmental irritants (such as cigarette smoke, fumes, odors, dusts and gases) and to poorly ventilated areas, must avoid even moderate exposure to hazards like dangerous machinery and unprotected heights, is limited to simple, unskilled jobs that do not required any complex written or verbal communication, must be employed in a low-stress job, defined as requiring no more than occasional decision-making and no more than occasional changes in the work setting, and should have no more than occasional interaction with the public and co-workers. (Tr. 26.) At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a commercial cleaner and bus driver. (Tr. 35.) At step five, the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy and therefore she was not suffering from a disability under the Social Security Act. (Tr. 35.)

### E.   Administrative Record

Plaintiff was 44 years old at the time of the hearing. (Tr. 199.) Plaintiff lives in a house with her two teenage children and a friend. (Tr. 52.) Plaintiff completed the eighth grade. (Tr. 70.) In her initial application Plaintiff alleged that she has a "crushed" right leg, low back pain, right knee and hip pain, ADHD, depression and anxiety. (Tr. 107.) Plaintiff testified that she is able to take

---

[3]

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

care of most of her personal grooming. (Tr. 53.) She occasionally received help in dressing from her daughter, if Plaintiff's clothing is not large enough to be easily pulled on. (Tr. 53.) Plaintiff testified that she can shower, but her daughter helps if she needs to shave her legs, because she has difficulty bending to do so. (Tr. 55-56.)

Plaintiff testified that she has a driver's license and she sometimes drives if she is not taking her medication. (Tr. 58.) She has pain in her hip and back with sitting. (Tr. 59.) She testified that she stands sometimes and walks around for a minute before sitting down again. (Tr. 62.) She testified that she was "supposed to use" a cane, but she prefers not to use one yet. (Tr. 63.) She explained that her doctor prescribed morphine three times per day and it is has "really helped" yet it makes her lightheaded. (Tr. 60, 65.) She explained that her muscle relaxers cause dizziness, blurriness and sometimes nausea, her Klonopin causes "memory" and drowsiness, and her Seroquel makes it difficult to get out of bed in the morning. (Tr. 66-67.) She also testified that she has trouble with her memory which she thinks it is due to the morphine, she has trouble reading and she has to reread things, she has trouble finishing tasks and she has blurry vision because she does not wear her glasses. (Tr. 69.) She testified that she uses albuterol for bronchitis and COPD and alleges taking four breathing treatments per day lasting about 15 minutes per treatment. (Tr. 68.) She uses a TENS unit two or three times per week for about a half hour. (Tr. 68.) She testified that she lies down three or four times per day for about 20 minutes. (Tr. 68.)

Upon questioning by her attorney, Plaintiff testified that her pain and depression had gotten worse in the prior two years and that she had numbness in her hands again, following an earlier surgery. (Tr. 64.) Plaintiff testified that she has tremors in her shoulder blade and in her neck and that she has trouble breathing with walking or getting up. (Tr. 65.) Plaintiff also testified that she was in special education in elementary school and cannot multiply or divide. (Tr. 71.)

7

Plaintiff's medical evidence is discussed in further detail below where it is relevant to the analysis.

The vocational expert ("VE") testified that Plaintiff has past work as a commercial cleaner and a bus driver. (Tr. 73.) At the hearing, the ALJ asked the VE to consider an individual of the Plaintiff's age, education and past work experience who is capable of performing sedentary work but "requires a sit/stand option" and "is limited to simple, unskilled work with just those limitations." (Tr. 74.) The VE testified that such an individual could not perform Plaintiff's past work, yet there are other jobs in the region, defined as the Tri-county area, and the nation, which such an individual could perform. (Tr. 74.) The VE then provided examples of positions with sample DOT codes. (Tr. 74.) The VE explained that the sit/stand option is not addressed in the Dictionary of Occupational Titles ("DOT") and that this testimony was based on the VE's observations and experience in the labor market. (Tr. 74.)

The ALJ then asked the VE a second hypothetical question:

> Assume the same restrictions as in the first hypothetical but with these changes. The person must avoid even moderate exposure to extreme cold and must avoid all exposure to environmental irritants like dust, gases, fumes, odors, including cigarette smoke. (Tr. 74.)

The VE testified that the limitation to the clean environments would reduce the number of jobs in one of the occupations, final assembler, which he had listed in response to the first hypothetical. (Tr. 75.) The ALJ then asked a third hypothetical question:

> [A]ssume the same restrictions as in the first hypothetical-second hypothetical question, but with these changes. The person must avoid even moderate exposure to poorly ventilated areas, must avoid even moderate exposure to hazards like dangerous machinery and unprotected heights, is limited to jobs that do not require any complex written or verbal communication, must be employed in a low stress job. I would define that as a job calling for no more than occasional decision making, no more than occasional changes in the work setting, and the person must have a job where they are

8

limited to no more than occasional interaction with the public and with co-workers. (Tr. 75.)

The VE testified that of the jobs he gave in response to the earlier hypothetical, such an individual would be able to perform the surveillance monitor, which the VE had earlier identified as "excluding Homeland Security and gaming institutions," DOT code 379.367-010 with an SVP of 2. (Tr. 74, 76.) The VE testified that it would reduce the final assembler positions "to a negligible amount." (Tr. 76.)

> The ALJ asked a fourth hypothetical question:
>
> Same restrictions as in the third hypothetical, but with these changes. No more than rarely climbing ramps or stairs – rarely, no more than five percent of a workday. Same with stooping. No crouching. Must avoid even moderate exposure to all temperature extremes, as opposed to just cold, and to wetness and humidity, and to chemicals. (Tr. 76.)

The VE testified that the surveillance monitor position would still be available. (Tr. 76.) Finally, the ALJ asked the VE to assume that the "person is incapable of working even a low stress job, can't work any jobs that have any amount of stress to them, have to take up to four work related-health related absences from work per month, and may be off task 25 percent of the workday." (Tr. 76-77.) The VE testified that these limitations, taken individually or together, preclude employment. (Tr. 77.) In response to questioning by Plaintiff's attorney, the VE also testified that "a person would not be maintained for the job if they were off task 11 to 25 percent outside of the normal breaks." (Tr. 79.)

## F.    Analysis

Plaintiff's counsel obtained leave to file a 39 page brief in support of his Motion for Summary Judgment in this case, and filed an additional Motion to Remand Pursuant to Sentence Six of 42 U.S.C. 405(g). It is the practice in this district that a sentence six request for remand be

raised in the Motion for Summary Judgment in a Social Security appeal and both motions will be addressed herein. Despite the lengthy pleadings, Plaintiff does not raise novel issues. Plaintiff argues that the ALJ failed to give proper weight to the opinions of a treating physician and a treating psychiatrist, the ALJ erred in relying on the opinions of the non-examining state agency physician and psychologist, the ALJ presented flawed hypothetical questions to the VE, the ALJ overlooked Plaintiff's thyroid disease, which was a severe impairment in the prior ALJ decision, the ALJ failed to consider Plaintiff's cervical condition and carpal tunnel disease in the RFC, the record shows that Plaintiff cannot work as a surveillance system monitor, the ALJ did not properly assess Plaintiff's credibility and the ALJ did not analyze Plaintiff's severe impairments by assessing their impact on basic work activities and doing a function by function analysis. (Doc. 14, pp. 3-4.)

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports a different conclusion. *McClanahan,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen,* 800 F.2d at 545. The Court has reviewed the record in full and I suggest that substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform a limited range of sedentary work. The medical evidence as a whole did not provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from her impairments, including medications or pain.

**1.      Whether the ALJ Properly Evaluated Treating Physicians' Opinions**

      **a.      Standards**

Plaintiff argues that the ALJ erred when he did not give controlling weight to the opinions of Dr. Thomas Pinson and Dr. Chapman.  "Medical opinions are statements from physicians and

psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." Social Security Ruling (SSR) 06-3p.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v.*

11

*Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

In addition, "a treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p.

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. §§ 404.1502, 416.902. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p. After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p; *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

13

### b.    Analysis

### I.    Dr. Pinson

Plaintiff argues that the ALJ did not give good reasons for giving less than controlling weight to Dr. Pinson's January 24, 2012 opinion. Dr. Pinson completed a form titled Pulmonary Medical Source Statement. (Tr. 762-65.) Dr. Pinson noted that he has treated Plaintiff approximately once a month since August 2008. (Tr. 762.) Both the evidence of record and the ALJ's decision support this assertion. (Tr. 28.) The decision shows that the ALJ considered both the length of Dr. Pinson's treatment relationship and the frequency of treatment, citing treatment records as far back as 2008. (Tr. 28-32.)

Dr. Pinson opined that Plaintiff is diagnosed with COPD, degenerative joint disease of the cervical and lumbar spine with severe stenosis, anxiety, hypothyroid, hypertension, and radiculopathy of the upper and lower extremities. (Tr. 762.) He noted that Plaintiff has acute asthma attacks that are moderate to severe in nature approximately three to four times per month, incapacitating her for two to three days at a time. (Tr. 762.) He opined that she can walk less than one block, sit for fifteen minutes at a time, stand for fifteen minutes at a time, and, of an eight-hour workday, sit less than two hours and stand and/or walk less than two hours. (Tr. 763.) He opined that she would need unscheduled ten minute breaks three to four times per working day. (Tr. 763.) On the opinion form, he checked the only two options given as to what Plaintiff would need to do during the breaks: "lie down" or "sit quietly." (Tr. 763.) He opined that Plaintiff can "rarely" lift less than 10 pounds, rarely twist, stoop or climb stairs, never crouch/squat or climb ladders, must avoid all exposure to cigarette smoke and must avoid even moderate exposure to all of the other listed environmental restrictions. (Tr. 764.) He noted that she was likely to be off task 25 percent or more, he checked a box indicating that she is "[i]ncapable of even 'low stress' jobs" due to

14

anxiety and physical stress, she is likely to have "good days" and "bad days," and she is likely to be absent from work due to impairments or treatment more than four days per month. (Tr. 764-65.) The form asked for a description of any other limitations that would affect the patient's ability to work a regular job on a sustained basis and the doctor noted poor concentration secondary to medication and shortness of breath. (Tr. 765.) The VE testified that several of the limitations set forth by Dr. Pinson, either singly or in combination, would be work-preclusive, for example, the projected absences and time off task. (Tr. 79-81.)

The ALJ did not give controlling weight to Dr. Pinson's opinion. Contrary to Plaintiff's argument, however, the ALJ gave several good reasons for the reduced weight he gave to Dr. Pinson's opinion. Plaintiff correctly points out that the ALJ stated that the "record does not reflect her respiratory impairment was severe enough to require hospitalization or even emergency room visits." (Tr. 32.) This is a valid reason given Dr. Pinson's opinion regarding the severity, frequency and incapacitating length of Plaintiff's asthma attacks. Asthma attacks of the length, severity and frequency to which Dr. Pinson opined are neither documented nor noted in the treatment records. The majority of the treatment forms did not even identify the "lungs" or respiratory system under the review of systems, while there were consistently marks that indicated the review of other systems. With the exception of October 2011, this is true of monthly treatment notes from June through December 2010 and January through December 2011. (Tr. 322-44, 594, 596, 601-18.) In his opinion, the doctor identified the following symptoms: shortness of breath, orthopnea, chest tightness, wheezing, episodic acute asthma, episodic acute bronchitis, episodic pneumonia, fatigue and coughing. (Tr. 762.) The listed symptoms were rarely identified in the treatment notes. Monthly treatment notes from June through December 2010, and again, January through December 2011, with the exception of October 2011, note that respiratory effort and breath sounds were

15

normal. (Tr. 323-45, 595, 597, 602-17 .) "COPD" was occasionally noted at the bottom of the treatment form, but most often respiratory effort and breath sounds continued to be noted as normal. (Tr. 349.) In October 2011, Plaintiff complained of shortness of breath; it was noted that respiratory effort remained normal, yet breath sounds were increased. (Tr. 599, 600.) On October 28, 2011, Dr. Pinson prescribed a nebulizer for use with Albuterol for Plaintiff's COPD. (Tr. 624.) An October 2011 chest x-ray was normal. (Tr. 625.) Despite the doctor's opinion that Plaintiff needs to avoid all contact with cigarette smoke, she continued to smoke, often a pack per day, as noted throughout the treatment records and her own testimony regarding having quit only a week prior to the hearing. (Tr. 324-40, 368, 369.) The treatment records do not support the severity, frequency or duration of the asthma attacks set forth in the doctor's opinion. (Tr. 762.)

The lack of hospital admissions was not the sole basis for discounting Dr. Pinson's opinion. However, it is relevant when the record, other than treatment in October 2011, is void of evidence supporting the frequency and severity of the incapacitating asthma attacks which the doctor alleges. (Tr. 762.)

The ALJ also considered and cited multiple imaging records and other objective evidence of record, not simply limited to Plaintiff's respiratory issues, that shows predominately normal or mild, with few mild to moderate findings regarding Plaintiff's lumbar and cervical spine. (Tr. 28-29, 317.) For example, a November 12, 2010 MRI of the lumbosacral spine revealed only mild degenerative changes. (Tr. 377.) An MRI of the cervical spine on the same date revealed a "disc protrusion towards left at C5-C6 resulting (sic) severe central canal stenosis as well as compression upon the exiting C6 nerve root on the left." (Tr. 378.) The remaining findings were mild or mild/moderate. (Tr. 378.) The ALJ also pointed out that, given the severity of Dr. Pinson's opinion, Plaintiff has undergone relatively conservative treatment. (Tr. 32.) Plaintiff has been

16

predominately treated with medication. The ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Pinson's opinion.

### ii.    Dr. Chapman

Records show Plaintiff attended treatment at Team Mental Health Services in December 2011 and January 2012. (Tr. 681-93.) She underwent a psychiatric evaluation with Dr. Chapman, M.D., on December 7, 2011. (Tr. 694-95.) It was noted that Plaintiff reported taking Ritalin, Prozac and Klonopin. (Tr. 694.) Dr. Chapman diagnosed panic disorder without agoraphobia and assess a GAF of 54. (Tr. 695.) The doctor noted that Plaintiff "demonstrated good grooming, timeliness, orientation times four, euthymic mood, normal speech, calm behavior with social smile, intact judgment, logical and coherent thought process, no psychosis evident, no delusional thought, fair insight, average intelligence and no obsessive or compulsive thought." (Tr. 695.) On January 4, 2012, Dr. Chapman noted the same presentation by Plaintiff, and reported additional diagnoses of attention deficit hyperactivity disorder not otherwise specified and R/O (rule out) prescription drug abuse. (Tr. 685.) GAF was again reported at 54. (*Id.*) Dr. Chapman completed a "Psychiatric Evaluation Form for Anxiety Related Disorders" dated February 22, 2012. (Tr. 753-761.)

Plaintiff argues that the ALJ appears to have dismissed Dr. Chapman's opinions. The ALJ considered Dr. Chapman's psychiatric evaluation and the Psychiatric Evaluation Form. The ALJ properly considered the length of the treatment relationship, three months, and considered mental health treatment notes. (Tr. 31-33.) The ALJ pointed out that the treatment relationship was only three months and that Dr. Chapman "apparently relied on the claimant's statements regarding the severity of her mental impairments." (Tr. 33.) The ALJ also pointed out that the Evaluation Form was only a checklist opinion and treatment notes did not provide supporting objective medical evidence. (Tr. 33.) In fact, in response to several of the questions on the form, Dr. Chapman

17

pointed out that the response was "per consumer's report." (Tr. 755-65.) On the form, the doctor noted twice: "Have only treated patient since 12/7/11." (Tr. 759.) The ALJ's reasoning, including that the responses were based on Plaintiff's subjective complaints, was not mere conjecture. The doctor himself pointed out the limited length of the treatment relationship as explanation for two of the responses, or lack thereof, and noted where responses were based on Plaintiff's report. (Tr. 759.) Further, the form itself is contradictory in that all of the following options are circled: "[m]arked restriction of activities of daily living," "[m]arked difficulties in maintaining social functioning," and "[m]arked difficulties in maintaining concentration, persistence or pace." (Tr. 754.) Yet later in the same form, the doctor has selected only two categories under the category "[i]mpairments in daily living activities" and noted them as "moderate." (Tr. 757.)  Within the functional categories including maintaining concentration, persistence and pace and social functioning, there is no option for the person completing the form to indicate whether the selections are for "marked" or "extreme" difficulty, but merely directs to select any areas in which the patient has exhibited "marked or extreme difficulty" without differentiation between the levels of severity. (Tr. 757.)

Where the doctor fails "to identify objective medical findings to support his opinion regarding [claimant's] impairments," the ALJ does not err in discounting the doctor's opinion. *See Price v. Comm'r Soc. Sec. Admin.*, 342 Fed. Appx. 172, 176 (6th Cir. 2009)(a psychiatrist who had treated the plaintiff for two years provided responses to interrogatories indicating the plaintiff "had numerous mental functional limitations and was disabled," yet failed to provide an explanation for the responses and treatment notes, therefore he did "not document any factors that would support the conclusion that [the plaintiff's] condition was debilitating"). The ALJ gave good reasons for

failing to give Dr. Chapman's opinion controlling weight and those reasons are supported by substantial evidence in the record.

**2.      Whether the ALJ Properly Considered Opinions of Non-Examining Doctors**

Plaintiff argues that the ALJ improperly gave greater weight to the non-examining physicians' opinions than to the opinions of Plaintiff's treating doctors. Plaintiff argues that the ALJ erred in relying on a state agency non-examining doctor and a psychologist who did not have the benefit of Exhibits 4F through 18F when they reviewed the record. "Although the opinion of a treating physician generally is given more weight, this Court has recognized that consultative opinions may be credited where they are supported by the record." *Price*, 342 Fed.Appx. at 177 (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993)); *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 (6th Cir.1987)).

In fact, the ALJ did not fully agree with the opinion of the non-examining medical consultant Leonard C. Balunas, Ph.D., who completed a mental residual functional capacity assessment dated July 21, 2011. The ALJ found that Plaintiff has moderate limitations in activities of daily living and social functioning, whereas Dr. Balunas had opined that Plaintiff had only mild restrictions in these functional areas. (Tr. 34, 112.) The ALJ agrees with Dr. Balunas that Plaintiff had moderate limitations in maintaining concentration, persistence or pace. (Tr. 34.) He also agreed with findings that she was moderately limited in the ability to understand, remember and carry out detailed instructions and maintain attention and concentration for extended periods, yet remained able to understand, remember and carry out tasks that had one and two step instructions, did not require prolonged periods of sustained concentration and she was able to perform "unskilled simple tasks." (Tr. 34, 116, 117.)

19

It was not only the non-examining medical consultant opinions which contradicted those of the treating sources. Plaintiff underwent an Adult Mental Status Evaluation and examination with Hugh D. Bray, Ph.D., on June 24, 2011. (Tr. 419-23.) The ALJ's findings are also supported by Dr. Bray's opinion. Dr. Bray concluded that Plaintiff was mildly impaired in the ability to relate to others, moderately impaired in the ability to understand, remember and carry out tasks, mildly impaired in the ability to maintain attention, concentration, persistence, pace and effort, and moderately impaired in the ability to withstand the stress and pressure associated with everyday work activities. (Tr. 423.) Like Dr. Balunas, Dr. Bray concluded that Plaintiff remained able to perform simple tasks. (Tr. 117, 423.)

The ALJ also considered the opinion of non-examining medical consultant Donald H. Kuiper, M.D., dated June 1, 2011. (Tr. 34, 114-15.) At the time Dr. Kuiper reviewed the record, he concluded that there was no new, relevant or material evidence and he adopted the RFC from the April 29, 2010 opinion. (Tr. 115.) Dr. Kuiper found Plaintiff had the ability to perform a limited range of sedentary work. The ALJ noted that he agreed with Dr. Kuiper that Plaintiff is limited to less than sedentary work. (Tr. 34.) Those portions of Dr. Kuiper's and Dr. Balunas's opinions with which the ALJ agreed are consistent with other evidence of record and the ALJ properly considered them and explained the weight given to portions of the opinions. Despite Plaintiff's argument to the contrary, the ALJ did not err in relying upon these opinions.

**3.    Whether the ALJ's Hypothetical Questions and Resultant RFC Adequately Addressed Plaintiff's Limitations**

Plaintiff argues that the ALJ erred in failing to identify the frequency of Plaintiff's need for a sit/stand option in the workplace. With respect to a need to alternate between sitting and standing, Plaintiff argues that Social Security Ruling (SSR) 96-9p requires that "[t]he RFC

assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p. Defendant agrees that pursuant to SSR 96-9p, a sit/stand option in a range of sedentary work should include the "required frequency of position changes." (Doc. 22 at 18.) Defendant, however, argues that Plaintiff has not provided evidence that her need to change positions would preclude her ability to perform work as a surveillance monitor and that Plaintiff waived this argument by failing to challenge the VE's testimony at the hearing.

The VE explained the sit/stand option twice in his testimony: once in response to the ALJ's questioning and the second time in response to Plaintiff's attorney's questioning on a postural issue. (Tr. 74, 77.) First, the VE testified that he wanted to "note that the sit/stand option is not part of the *Dictionary of Occupational Titles*, and is per my observation and experience in the labor market." (Tr. 74.) After the ALJ questioned the VE, Plaintiff's attorney ("Q" below) initiated a line of questioning that included the following:

Q: . . . The jobs that you required would require no more than rare stooping and bending?

A (VE): That's correct.

Q: Okay, all right. With –

A: They may accommodate for the sit/stand option that His Honor indicated earlier.

Q: Right, right, I got that part. With respect to handling, what range would the jobs require? (Tr. 77-78.)

Further, when Plaintiff's attorney posed a hypothetical question, he included a sit/stand option without a numerical frequency limitation, just as the ALJ did. The VE testified in response to that set of limitations that only one of the limitations the attorney included, the limitation to percent of

21

time off-task outside normal breaks, would preclude performance of the surveillance monitor position. (Tr. 79-80.)

There is case law in this circuit holding that the failure to probe a deficiency at the hearing waives that challenge on appeal. *See Sims v. Comm'r of Soc. Sec.*, 406 Fed.Appx. 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal."). In the instant case, Plaintiff's attorney asked the VE several questions, by adding additional and mostly work-preclusive limitations. Plaintiff's attorney did not probe the alleged deficiency he now raises, even when the VE raised it in response to the attorney's line of questioning. I also suggest that in the instant case, the failure to include a frequency determination was not reversible error where the hearing transcript showed VE testimony visited this issue twice and the VE clarified the basis of the sit/stand option and its effect on the particular jobs to which the VE testified. Case law shows that the failure to define the sit/stand option in specific increments of time is not necessarily fatal to the ALJ's RFC and subsequent reliance on the VE testimony. *See generally Case v. Comm'r of Soc. Sec. Admin.*, 2013 WL 5707796 (N.D.Ohio Oct. 18, 2013) ("To comply with the Ruling, the ALJ need not include increments of time to be spent in each position under an at will sit-stand option." Citations omitted.); *see also Cutting v. Astrue*, 2010 WL 2595144 at *3 (D.Me. June 23, 2010)(not necessary to force ALJ to choose a specific interval of time for sit/stand option where "there is no medical evidence cast in such terms, when the need is found to be for sitting and standing at will, and when the vocational expert testifies that a specific job is available under those terms.").

It is also worth noting the sit/stand option present in the current RFC is the same wording as the sit/stand option from the prior ALJ's RFC. In a decision dated April 29, 2010, the prior ALJ found that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR sections 404.1567(a) and 416.967(a) except while she can lift ten pounds occasionally and lesser weights frequently, stand/walk two hours in an eight hour day, sit six hours in an eight hour day but requires a sit/stand option and is limited to unskilled simple tasks." (Tr. 93.) I suggest that the ALJ's failure to include a time-increment frequency component to the hypothetical questions and resultant RFC was not error.

Next, Plaintiff argues that the ALJ erred in including an RFC limitation stating that Plaintiff must avoid exposure to poorly ventilated areas when such limitation was not included in the hypothetical question to the VE. The ALJ's second hypothetical question contained so many limitations on environmental irritants that the VE testified in response that the assembly jobs would be reduced to only those that were in "clean environments." (Tr. 75.)

The ALJ's third hypothetical question contained a limitation that the individual "must avoid even moderate exposure to poorly ventilated areas." (Tr. 75.). Although the wording is indeed different between the hypothetical questions, where one question built upon the limitations of the previous question, the VE's testimony shows that in response to the question about avoiding "even moderate exposure," the jobs that were given were limited to a "clean environment." There is no evidence to suggest that the limitation to avoid all exposure to poorly ventilated areas, instead of avoiding moderate exposure to poorly ventilated areas, in the context of VE testimony providing a limited range of jobs that the VE described as existing in a clean air environment, would have impacted the ability of the hypothetical individual to perform the surveillance monitor position. *See Sims*, 406 Fed.Appx. at 982 ("The hypothetical questions incorporated relevant impairments;

23

any shortcoming was not so significant as to render the vocational expert's testimony unreliable."). Any error in this regard is harmless.

Plaintiff argues that the ALJ's hypothetical question to the VE and RFC finding do not adequately account for Plaintiff's "moderate" difficulties in maintaining concentration, persistence and pace. (Doc. 14-1 at 20.) The ALJ followed the prescribed rules for evaluating Plaintiff's mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ properly measured the severity of Plaintiff's mental disorder in terms of four functional areas, known as the "B" criteria, by determining the degree of limitation in each area. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ determined that Plaintiff has moderate limitations in activities of daily living, moderate limitations in social functioning and moderate limitations in maintaining concentration, persistence and pace and that there have been no episodes of decompensation. (Tr. 24-25.) In making these findings, the ALJ considered the medical opinions and other evidence of record, including Plaintiff's testimony and reports. (Tr. 24-34.)

Plaintiff argues that the ALJ's limitation to "simple, unskilled work," is not sufficient to address moderate difficulties in maintaining concentration, persistence or pace. (Doc. 14-1 at 20.) In fact, these limitations were only a part of the non-exertional limitations contained in the RFC and hypothetical question. The ALJ asked the VE, in addition to the physical limitations, to consider an individual who "is limited to jobs that do not require any complex written or verbal communication, [and] must be employed in a low stress job," defined as "a job calling for no more than occasional decision making, no more than occasional changes in the work setting, and . . . limited to no more than occasional interaction with the public and with co-workers." (Tr. 75.)

Plaintiff relies on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), and *Cheeks v. Comm'r of Soc. Sec.*, 690 F. Supp. 2d 592, 602 (E.D. Mich. 2009), for the premise that the

limitation to simple, unskilled work, or simple, routine work is insufficient to address Plaintiff's limitations. *Ealy* is distinguishable in that it contained evidence from more than one source that claimant's ability to "sustain attention and concentration for simple repetitive tasks was moderately limited." *Ealy*, 594 F.3d at 509, 515 n.2. Furthermore, one of the medical opinions found that Ealy could sustain attention in two-hour segments to complete simple repetitive tasks "where speed was not critical." *Id.* at 516. The *Ealy* court pointed out that this description "speaks to some of the restrictions – in pace, speed and concentration" that one of the doctors and the ALJ had found Ealy to possess, yet were omitted from the ALJ's hypothetical question. *Id.* District Courts in this Circuit have declined to expand *Ealy* beyond a fact-based analysis. *See e.g., Marini v. Comm'r of Soc. Sec.,* 2014 WL 1230034 *6 (E.D.Mich. 2014); *Tanzil v. Comm'r of Soc. Sec.,* 2013 WL 5423792 *2 (E.D.Mich. 2013); *Jackson v. Comm'r of Soc. Sec.,* 2011 WL 4943966 *4 (N.D.Ohio 2011); *Shaffer v. Colvin*, 2014 WL 1207534 *7 (E.D.Tenn. 2014); *see also Lewicki v. Comm'r of Soc. Sec.,* 2010 WL 3905375 *2 (E.D.Mich. 2010)("Decisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work."). Similarly, this case is distinguishable from *Cheeks*, in which "both treating and consultive opinion overwhelmingly support the conclusion that Plaintiff's psychomotor impairments, i.e., pacing limitations, warranted mention in the question to the VE." *Cheeks*, 690 F. Supp. 2d at 602. In *Cheeks*, the court determined that the failure to address "pacing limitations" was "particularly critical given the fact that the VE's job findings (hand packer, production inspector, assembler) consist exclusively of quota-driven positions." *Id.* ("To be sure, the ALJ's limitations of 'simple routine tasks' or 'a low stress environment,' along with the condition that she must work in an atmosphere with 'minimal changes,' are not intrinsically inadequate to account for moderate deficiencies of concentration, persistence and pace.").

In the instant case, the ALJ considered Plaintiff's reports that she has difficulty concentrating with certain tasks and that she is forgetful due to her medication. (Tr. 25.) The ALJ also considered the opinions of psychiatrist Dr. Chapman, Dr. Bray and the non-examining medical consultant, as discussed above. In an Adult Mental Status Evaluation dated June 24, 2011, from examining medical consultant Dr. Bray, the doctor specifically opined that in interacting with Plaintiff, Plaintiff "was able to perform simple repetitive tasks. It is likely the claimant could not handle more complex tasks." (Tr. 419-23, 423.) He also opined that Plaintiff's mental ability to "maintain attention, concentration, persistence, pace and effort is mildly impaired." (Tr. 423.) The ALJ's RFC limiting Plaintiff to simple, unskilled jobs without complex written or verbal communication is sufficient to address moderate limitations in maintaining concentration, persistence or pace where, as here, there is evidence that Plaintiff can perform such tasks and evidence that Plaintiff's ability to perform and handle work tasks diminishes as the complexity of the work increases.

## 4.    Application of *Drummond* and Acquiescence Ruling 98-4(6)

Plaintiff argues that the ALJ erred when he failed to list her thyroid disease as a severe impairment. In the prior decision dated April 29, 2010, the ALJ identified the following severe impairments: right tibial plateau fracture post right total knee replacement, L4/5 spinal stenosis, post traumatic stress disorder, attention deficit disorder, adjustment disorder with anxiety and depressed mood, history of narcotics abuse for pain control, non-severe type 2 diabetes mellitus, hypertension, thyroid disease and mild cardiomegaly. (Tr. 91-92.) Plaintiff relies on Acquiescence Ruling (AR) 98-4(6), addressing *Drummond  v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), to argue that the current ALJ was bound by the findings of the previous ALJ with respect to Plaintiff's thyroid condition, absent new and material evidence relating to that finding.

26

(Doc. 14-1 at 24.) AR 98-4(6) applies only to Social Security claimants residing in Kentucky, Michigan, Ohio or Tennessee. *See* AR 98-4(6). AR 98-4(6) provides:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6) also states that it

> [A]pplies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim. AR 98-4(6).

With respect to *Drummond* and AR 98-4(6), this case is differentiated from *Drummond* in that the ALJ ultimately found Plaintiff more restricted in terms of the current RFC than the prior decision. *See generally, Castrovinci v. Astrue*, 2012 WL 928736 (N.D.Ohio 2012). In support of her argument, Plaintiff also lists several general symptoms of thyroid disease from a medical dictionary, without citation to specific evidence of record. (Doc. 14-1 at 24.) It is well-established that "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *Drogowski v. Comm'r of Soc Sec.*, 2011 WL 4502988 at *9 (E.D.Mich. 2011)(quoting *Baklema v. Comm'r*, 2011 WL 2601479 (W.D.Mich. 2011) (quoting *McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680 at *5 (6th Cir. 2000); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

*Garris v. Comm'r of Soc. Sec.*, 2013 WL 3990754 at *2 (N.D.Ohio 2013), provides that "[i]f nonsevere impairments are considered in conjunction with severe impairments for the purpose of subsequent steps, the failure to find one specific impairment to be severe at step two is not a

reversible error." *Garris,* 2013 WL 3990754 at \*2 (citing *Maziarz v. Sec'y of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir.1987)); *see also Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008) (unpublished disposition) (where the court found that once an ALJ finds a severe impairment at step two, whether or not other impairments should have been considered "severe" at this step is legally irrelevant).

Plaintiff suffered no prejudice in the failure to list the thyroid condition because Plaintiff has identified no corresponding limitations supported by the record[4], the thyroid condition was considered in the opinion of at least one of the doctors upon which the ALJ relied[5], and the current ALJ's RFC is more restrictive than the prior ALJ's RFC.

## 5.    Whether The ALJ Properly Considered Plaintiff's Cervical Condition and Carpal Tunnel Syndrome

Plaintiff argues that the ALJ "should have assessed Plaintiff's cervical condition as 'severe' and determined it's (sic) impact on 'basic work activities' and the activities indicated above i.e., handling, fingering, reaching, repetitive action, bilateral manual dexterity, and extension, flexion and rotation of the neck." (Doc. 14-1 at 27.)

With respect to the carpal tunnel syndrome, as Defendant points out, a Physician Activity Status Report dated December 22, 2004, shows that Plaintiff was diagnosed with a sprain of an unspecified site of the wrist and carpal tunnel syndrome. She was restricted to no repetitive lifting over ten pounds, and no pushing or pulling over 15 pounds. (Tr. 425.) These weight restrictions are within those of a sedentary range of work. It is telling that Plaintiff cites only records from

---

[4]It is worth noting that in the current application Plaintiff did not identify thyroid as a condition upon which she was seeking disability. (Tr. 107, 121, 255, .)

[5]Dr. Kuiper adopted the prior ALJ's RFC, which included thyroid disease as a severe impairment. (Tr. 114-15, 128-29.)

2004 to support her argument that the ALJ failed to consider her diagnosis of carpal tunnel syndrome. (Tr. 14-1 at 27.) Plaintiff's argument is, I suggest, without merit. First, the records pre-date the prior ALJ's decision and, at best, would have been relevant to that prior time period, not the period at issue herein. Second, and most important, the record lacks evidence from the relevant time period to support a current diagnosis of carpal tunnel syndrome with related signs and resultant limitations. Treatment notes from 2007 show Plaintiff had 5/5 strength and normal pinprick sensation in the upper extremities on examination, and was neither complaining of continued wrist and hand problems nor reporting it in her medical history. (Tr. 441-42.) By 2007 Plaintiff's upper extremities were reportedly normal and she was not reporting a history of carpal tunnel syndrome. (Tr. 446-47.) As recently as a 2011 mental status evaluation, Plaintiff made no mention of limitations on using her hands or neck, despite noting her bad back, leg and hip. (Tr. 420.)

As Defendant points out, the ALJ fully considered the 2010 MRI images of the cervical spine. (Tr. 29.) Plaintiff fails to cite evidence of any resultant limitations that are not already accounted for in the RFC. Plaintiff's attorney's speculation that the cervical condition "would likely impact [Plaintiff's] ability to turn her head left, right, up down (sic), or even hold it in a static position, critical to watching closed circuit televisions and using a telephone to report incidents" is simply not enough to establish the actual existence of those limitations and resultant disability. (Doc. 14-1 at 27.) As set forth above, the mere diagnosis of an impairment does not establish its resultant limitations. *See Drogowski*, 2011 WL 4502988 at *9. The ALJ's RFC severely restricts Plaintiff's work activity and accounts for the limitations supported by substantial evidence in the record.

**6.      Whether the ALJ's Finding that Plaintiff Can Perform the Job Of Surveillance System Monitor is Supported By Substantial Evidence**

Plaintiff argues that because the ALJ found that her attention deficit disorder is severe, "[b]y definition, such condition will preclude Plaintiff's capacity to perform this work." (Doc. 14-1 at 29.) Plaintiff then goes on to cite the "Diagnostic Criteria for Attention Deficit/Hyperactivity Disorder." (*Id.*) Once again, Plaintiff attempts to equate a diagnosis with the full range of possible resultant symptoms. Plaintiff is advised to consider the requirements of the Social Security regulations:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim. 20 C.F.R. §§ 404.1512(c), 416.912(c).

The records contain reports from doctors who considered Plaintiff's history of ADHD in giving their medical opinions, for example, Dr. Bray's report. (Tr. 419-23.) Therefore, the resultant limitations from Plaintiff's ADHD were considered by the ALJ in determining the RFC. The ALJ correctly relied on the evidence of record rather than including a generic laundry list of potential ADHD symptoms in his RFC.

Plaintiff argues that she cannot work as a surveillance system monitor because she has only an 8th grade education and she was in special education classes in elementary school. Plaintiff argues that surveillance system monitor position requires a General Educational Development Reasoning Development Level of 3, Mathematical Development Level of 1 and a Language Development Level of 3. (Doc. 14-1 at 31.) Plaintiff argues that Plaintiff's educational history, those areas of reading and mathematics upon which he questioned her at the hearing, and the

"cognitive disorder" diagnosed by Dr. Bray would impact her ability to perform this job. (*Id*. at 30-32.)

At the hearing, Plaintiff testified that she had completed the eighth grade and had been in special education classes in elementary school. (Tr. 70-71.) The ALJ's hypothetical questions to the VE included the consideration of an individual with the Plaintiff's age, education and work background.  Upon questioning from Plaintiff's attorney, the VE confirmed that the jobs given would be within the SVP of 2 which indicated the level training needed for the position, in this case a short demonstration. (Tr. 82.) The VE's testimony was based in part on Plaintiff's age, education and past work. It is worth noting that Plaintiff's attorney did not develop a line of questioning at the hearing regarding GED levels, despite briefly raising the issue. (Tr. 82.) Plaintiff does not identify an unresolved conflict with respect to this issue, but merely argues that she has limitations in education that would preclude performance of the surveillance monitor.  I suggest that Plaintiff's argument is without merit in light of the VE testimony taking into account Plaintiff's educational background, as well as the mental evaluation opinions on which the ALJ relied to support the RFC, including a limitation to simple, unskilled jobs.

The surveillance monitor position was provided by the VE in response to a limitation to unskilled work. (Tr. 74.)   Case law shows that an ALJ is not required to conduct an independent investigation into whether the VE's testimony was accurate. *See Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008). Defendant correctly points out that at least two circuit courts have held that a GED Reasoning Development Level of 3 is not inconsistent with simple work and it is worth noting that, despite Plaintiff's argument that she was in special education and only completed the eighth grade, she was able to learn and perform past relevant work as a bus driver, which is

semi-skilled. (Tr. 35.) *See generally Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2009)(citing *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007)).

The ALJ properly relied on the VE's testimony as substantial evidence at step five of the analysis, finding that a significant number of other jobs exists in the economy that Plaintiff can perform.

## 7.    Whether the ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff argues that the ALJ failed to follow the Administration's Regulations and Rules in assessing her credibility. Contrary to Plaintiff's argument, the ALJ gave very specific reasons for discounting Plaintiff's testimony about the intensity, duration and limiting effects of her symptoms. As required by the Regulations, the ALJ fully explained his credibility determination with respect to Plaintiff's symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. §§

32

404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41. The regulations set forth the kinds of evidence and factors that must be considered in assessing the credibility of an individual's statements about symptoms and their effects, including the following: daily activities, location, duration, frequency and intensity of pain or other symptoms, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications taken to alleviate pain or other symptoms, treatment other than medication for symptom relief, any other measures used for symptom relief, and any other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ considered all the evidence of record in determining the credibility of Plaintiff's statements about the limiting effects of her symptoms. In his decision, the ALJ considered the objective medical evidence of record. He specifically cited lumbar and cervical spine images that revealed only mild to moderate findings, as well as the severe central canal stenosis at C5-6. (Tr. 28-29.) The ALJ also considered the recommended and prescribed treatment for Plaintiff's impairments, noting repeatedly that treatment was conservative. (Tr. 30, 32, 34.) Plaintiff was most often treated with medication including pain medication and there is no evidence that surgery has been recommended to address her back impairments. As noted above, despite the severity of Plaintiff's alleged pain and breathing impairments, the record shows no evidence of emergency room visits or hospital admissions. While the lack of hospital or emergency room treatment alone is not dispositive of Plaintiff's claims, it may be considered as evidence of record. Plaintiff had missed or cancelled three scheduled appointments at Team Mental Health Services in January 2012. (Tr. 33.) Again, such information is not dispositive, but may be considered when an ALJ is considering the frequency and types of treatment for Plaintiff's impairments.

With respect to her mobility, despite the severe limitations in standing and walking to which Plaintiff testified, and an allegation that her right knee gives out, Plaintiff testified that she "was supposed to use [a cane]," but she feels like she already looks older now and does not want to use one until she absolutely has to. (Tr. 27, 30, 62-63.) The ALJ pointed out throughout the decision those activities of daily living in which Plaintiff is able to engage and those in which she needs assistance. For example, she is able to take care of her grooming and hygiene, yet needs assistance from her daughter in dressing if she is not wearing loose-fitting clothing and in shaving her legs. (Tr. 27.) She testified she is able to drive if she is not taking her medication. (Tr. 27, 58.) At a June 2011 examination she reported she was able to cook simple meals, cash checks and provide childcare. (Tr. 24, 420.)

Plaintiff argues that the ALJ erred in mentioning her past narcotic abuse as a reason for discounting her credibility since he had already found that her history of narcotic abuse was no longer a severe impairment. (Doc. 14-1 at 35, tr. 23-24.) The ALJ was careful and precise in mentioning Plaintiff's narcotic use in connection with the credibility determination. He noted that the record shows that an April 28, 2010 lab report noted that Methadone and its metabolite EDDP were confirmed and the record contains a handwritten note "discharge for narcotics." (Tr. 33, 410.) The ALJ also specifically considered evidence that post-dates the prior ALJ's April 29, 2010 decision and occurred within the relevant time period. On May 10, 2010 Plaintiff admitted taking a friend's Methadone and Lortab and laboratory results from July 12, 2010 indicate that Plaintiff's Morphine level was elevated; a handwritten note states "Pt taking more than Rx'd." (Tr. 33, 348, 402.) Contrary to Plaintiff's argument, the ALJ considered both Plaintiff's allegations that she needs to lay down during the day and her alleged side effects from medication. (Tr. 24, 28.) The allegations that the medications make her drowsy and cause memory problems increase the

34

relevance of the laboratory testing that shows she was taking more morphine than prescribed, and her report that she was taking a friend's medication.

The ALJ's credibility finding was properly explained with reference to specific evidence of record and is supported by substantial evidence in the record. The ALJ fully explained his credibility determination, considered a range of record evidence and his determination is supported by substantial evidence in the record.

## 8. Whether the ALJ's RFC is Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC does not include all of Plaintiff's exertional and non-exertional limitations. Specifically, Plaintiff argues that the RFC "does not include any impact on the seven strength demands listed above," which are sitting, standing, walking, lifting, carrying, pushing and pulling. (Doc. 14-1 at 37.) This is incorrect. The ALJ's RFC starts by stating that Plaintiff can perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." Sedentary work as defined necessarily includes the strength demands which Plaintiff alleges are absent:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

"'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p. Pushing and pulling are necessarily restricted by the exertional level set forth in the definition of sedentary work.

Plaintiff argues that the ALJ did not include any handling or reaching limitations in the RFC. (Doc. 14-1 at 38.) In a hypothetical question posed to the VE, an ALJ is required to

incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d at 1235. As set forth above, the ALJ's credibility determination is supported by substantial evidence as was the weight he gave to the various opinions of record. Therefore, the ALJ did not err in failing to include additional limitations in the RFC.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407, 1987 WL 36575 at *2 (6th Cir. Jan. 6, 1987).

The ALJ's RFC is supported by substantial evidence.  The ALJ's hypothetical question to the VE incorporated Plaintiff's limitations that the ALJ found credible. The VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform a substantial number of jobs in the economy.  The ALJ's decision at step five is based on substantial evidence.

## 9.    Plaintiff's Request For Remand Under Sentence Six Should Be Denied

Plaintiff asks for a remand for consideration of evidence that Plaintiff alleges is both new and material. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401).  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g);

36

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

Plaintiff requests a remand for consideration of documents that are identified in the Appeals Council decision as exhibits B19F, B20F, B21F, B22F, B23F and B24F. (Doc. 16 at 3, Tr. 4, 5.) As an initial matter, Plaintiff does not show good cause for failing to provide these documents. At the time of the hearing, Plaintiff's attorney knew of the existence of the carpal tunnel syndrome-related records. Plaintiff's attorney initially asked for additional time to submit the documents, then made a strategic decision that he did not need the record left open for the submission of documents if the ALJ could only expedite Plaintiff's decision prior to Plaintiff's date last insured. While this strategy appears not to have worked in Plaintiff's favor, since the decision post-dates Plaintiff's date last insured, surely the withholding of known documents does not constitute a basis for further remand. (Tr. 36, 46-47, 83-84.) Such a result would be absurd, making final disposition of Social Security claims impossible in the face of piece-meal claims and never-ending remands.

Even if good reason were found, the documents are not new, nor are they material. On the contrary, none of the documents are from the relevant period at issue in this case. They predate not only the current relevant period, they pre-date the date of application in the prior ALJ's decision, and they pre-date Plaintiff's alleged September 13, 2008 onset date. (Tr. 20.) Contrary to Plaintiff's argument, they are not relevant to her past diagnosis of carpal tunnel syndrome where there is no current evidence of such impairment, as set forth above. Plaintiff's motion for remand should be denied. (Doc. 16.)

### G.    Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (doc. 22) should be granted, the motions of Plaintiff (doc. 14, 16) denied and the decision of the Commissioner affirmed.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/ Charles E Binder
                                        _____
                                        CHARLES E. BINDER
Dated: September 17, 2014               United States Magistrate Judge